STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

CASE TYPE: CONTRACT

---

Jerome C. Ruzicka,

   Plaintiff,

vs.

Starkey Laboratories, Inc., a corporation,
Brandon Sawalich, and William Austin,

   Defendants.

Court File No. _____
Judge: _____

**SUMMONS**

---

**TO THE ABOVE NAMED DEFENDANTS:**

  1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no Court file number on this Summons.

  2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at Hellmuth & Johnson, PLLC, 8050 West 78th Street, Edina, Minnesota 55439.

  3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

  4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A Default Judgment can then be entered against you for the relief requested in the Complaint.

1



5.    **LEGAL ASSISTANCE.**  You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6.    **ALTERNATIVE DISPUTE RESOLUTION.**  The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

HELLMUTH & JOHNSON, PLLC

Dated: January _12_, 2016          By: _____
Marshall H. Tanick (ID # 0108303)
8050 West 78th Street
Edina, Minnesota  55439
Telephone:    (952) 941-4005
Facsimile:     (952) 941-2337
**ATTORNEYS FOR PLAINTIFF
JEROME C. RUZICKA**

2

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

CASE TYPE: EMPLOYMENT

---

Jerome C. Ruzicka,

        Plaintiff,

vs.

Starkey Laboratories, Inc., a corporation,
William Austin, and Brandon Sawalich,

        Defendants.

Court File No. _____
Judge: _____

**COMPLAINT**

**JURY TRIAL REQUESTED**

---

Plaintiff Jerome C. Ruzicka ("Plaintiff" or "Ruzicka"), for his Complaint against
Defendant Starkey Laboratories, Inc., ("Starkey"), Brandon Sawalich ("Sawalich"), and William
Austin ("Austin") states and alleges as follows:

### PARTIES

1.    Plaintiff Ruzicka resides in Hennepin County, Minnesota.

2.    Defendant Starkey is a Minnesota corporation that is engaged in the business of
developing, manufacturing, and distributing hearing aids.  Its principal place of business is
located in Hennepin County, Minnesota.  Starkey, which does business as Starkey Hearing
Technologies, Inc., provides health care services as one of the world's largest developers,
manufacturers, and shippers of hearing aids.

3.    Defendant Austin is the founder, Chief Executive Officer (CEO), sole member of
the Board of Directors, and majority shareholder of Defendant Starkey.

1



EXHIBIT
B

4.     Defendant Sawalich is an individual who is the stepson of Defendant Austin, has had a title of Senior Vice President of Starkey, and has had various duties in charge of sales, marketing, and customer relations at Starkey.

5.     Venue is proper in this court because Plaintiff resides in Hennepin County, Defendant's principal place of business is in Hennepin County, and the cause of action arose, in whole or in part, in Hennepin County.

6.     The Court has jurisdiction over the subject matter of this lawsuit and has jurisdiction over the parties.

## FACTUAL BACKGROUND

7.     Ruzicka was an employee of Starkey from 1977 until his termination on September 8, 2015, and became President of the company in 1998, a position he occupied continuously until his termination. During that time, Ruzicka was instrumental, along with other long term senior executives and other employees and staff, in Starkey's revenue growing from about $16 million to approximately $800 million per year and becoming one of the largest and most successful companies of its kind in both the United States and the world.

8.     Ruzicka had broad duties and authority in his position as President, consisting of managing the company and its operations and, pursuant to his job description, was authorized to establish a business plan to achieve corporate objectives, among other matters.

9.     Ruzicka and Starkey were parties to an Employment Contract ("Contract") effective January 7, 2006, and an Amendment ("Amendment") to the Contract entered into on December 1, 2007. The Contract states that it will terminate on January 6, 2016, and further provides various terms and conditions of employment, including annual compensation, bonuses, and other benefits, as well as a Deferred Compensation Program requiring payment to be made

to Ruzicka in ten (10) yearly increments, from January 7, 2016, to January 7, 2025, in an amount equivalent to his annual salary for each of the previous years during the ten year term of the Contract. Ruzicka's annual salary during those years ranged from $698,000 to more than $1 million, and was in the approximate cumulative amount of $8,700,000.

10.    Therefore, Ruzicka is entitled, under the Deferred Compensation provision in the Contract, to be paid approximately $8,700,000, in yearly increments from January, 2016, through January, 2025 in annual amounts equivalent to the amount of his salary during each year from 2006 – 2015.

11.    The Amendment provided that Starkey and Austin would pay to Ruzicka an "Equity Value Bonus" of 10 percent of the Fair Market Value of Starkey's stock upon the occurrence of one of the following "triggering" events:  the death of Austin; the disability of Austin; or change in control of Starkey, consisting of the sale or disposition of all or substantially all of the assets of Starkey; or merger or consolidation of Starkey with, or into, another company.

12.    The Amendment is signed by Ruzicka, Starkey, and Austin, on behalf of Starkey, as well as in his individual capacity.  The estimated value of Starkey, at the present time, is in excess of $1 billion, which would entitle Ruzicka, upon occurrence of a "triggering" event, to be paid at least $100 million, or more, depending upon the timing of that event.

13.    Neither the Contract nor the Amendment contains any non-compete provision or restriction on any business activities by Ruzicka, including future post-employment activities.

14.    The Amendment also provides that the parties shall not commence civil action based upon the Contract  or Amendment and that any disputes regarding the Contract or Amendment shall be submitted solely to binding mediation or arbitration through the American Arbitration Association (AAA) and Plaintiff has initiated a separate proceeding before the AAA

with respect to those disputes arising under the Contract and Amendment, are not encompassed in this Complaint, which concerns disputes that do not arise under the Contract or Amendment.

15.     A true and correct copy of the Contract is attached hereto as Exhibit 1.  A true and correct copy of the Amendment to the Contract is attached hereto as Exhibit 2

16.     The claims asserted in this lawsuit are not based upon the Contract or the Amendment and, therefore, are appropriate in this litigation.

17.     As an employee of Starkey, Ruzicka was a participant in an Employee Stock Ownership Program (ESOP), which provides him with a financial interest in the value of the company.

18.     On or about September 8, 2015 at the time of termination of Plaintiff's employment, Austin indicated to Ruzicka that he was aware that the Amendment provided for Ruzicka to receive up to 10% of the value of Fair Market Value of the company upon certain triggering events, and Austin told Ruzicka that he would do whatever he could to prevent Ruzicka from receiving any money under that provision by taking action that would cause the company to lose value.

19.     Ruzicka was involuntarily terminated from his employment on September 8, 2015, at which time he was forcibly escorted out of the building at the instigation of Austin, by law enforcement personnel hired by Starkey.  Ruzicka's termination was part of a company-wide purge of executive personnel, which is continuing in nature, including several other long-term senior executives, as well as other key employees of the company, who were terminated at the same time as Ruzicka, and thereafter.

20.     At the time of the termination of Plaintiff's employment, Austin caused Starkey to communicate to its 4800 employees that Ruzicka was the subject of "an ongoing investigation,"

and further published a similar communiqué to the media that Ruzicka was under "investigation," which indicated wrongdoing on the part of Ruzicka.

21.    Prior to his termination, Ruzicka discussed with another senior Starkey executive the possibility of engaging in some other business distributing hearing aids following the expiration of his contract, on January 6, 2016, which was not violative of any obligations of Ruzicka or restrictions to which he was subject.

22.    Austin became aware of that discussion from information provided to him by Defendant Sawalich, who considers himself to be an heir apparent to Austin, who is 73 years old, upon Austin's disability, retirement, death, or other cessation of active business activities.

23.    Austin terminated Ruzicka's employment at the urging of Sawalich.  Austin sought to terminate Ruzicka's employment because Austin wanted to try to avoid paying Ruzicka the amounts to which he was entitled to under the Agreement, including the 10 years of Deferred Compensation payments equivalent to his salary for 10 years, and the 10% value of the company.  A large number of Starkey executives expressed fear to Ruzicka that Sawalich would succeed him as President due to the rumors that were circulated by Sawalich and his mother, Austin's wife.  These employees related that they feared that their job security would be in jeopardy because Sawalich had not demonstrated competency in business matters.  He also was known to favor perceived loyalty over talent and contribution.  Defendants wanted to impugn Ruzicka and diminish his credibility and stature in the event he were to engage in activities selling hearing aids after his Agreement with Starkey expired with on January 6, 2016, even though Austin was aware that Ruzicka was not subject to any noncompete restrictions, including future post-employment activities, as well as other reasons more fully set forth in Count I, below.

24.     Ruzicka was aware of reports from time-to-time of other improprieties engaged in by Sawalich and Austin. These included, but were not limited to the following: Starkey is an S corporation. Austin claims to be a resident of the State of Texas, in order to avoid having to pay Minnesota state income taxes, but he does not actually reside or spend any appreciable time in Texas; a related Foundation (the "Foundation") which Austin oversees, smuggles hearing aids into foreign countries in order to avoid paying custom duties and that Foundation also purchases or recycles hearing aids, which it claims is done for charitable purposes around the world. The Foundation promotes and maintains the value of those hearing aids at $250, even though they are purchased for approximately $5, or less. Austin routinely pressured manufacturing personnel to use defective microphones and speakers, and other used or defective parts for hearing aids. The Foundation also provided hearing aids to patients without charge, to-wit approximately $3,000, but solicited donations to the Foundation and told patients that they could make donations and deduct the amounts from their taxes, which effectively resulted in them getting free hearing aids. This practice was subject of an investigation by the Internal Revenue Service, which ultimately led to its cessation.

25.     Starkey has, for a long time, built good hearing aids with salvaged components, at Austin's direction, which are then sold as new, which Ruzicka felt constitutes deceptive consumer practices.

26.     Starkey also made financial payments in the amount of $30,000,000 for the production of Operation Change, a television reality show, produced by and featuring Steven Sawalich, another one of Austin's stepsons, which had no commercial value and was not profitable.

27.    A business owned by Steven Sawalich, Articulus Entertainment, also was given substantial amounts of money, in the approximate amount of $20 million to prepare a movie which was commercially unsuccessful, resulting in the company producing a movie and owing Starkey a substantial amount of money, which it did not repay.  Austin attempted to backdate contracts to show that he was a part owner of the company that produced the movie, even though he was not, to justify write-offs of expenses, and also attempted to have the bad debt written off the company's books.  Austin also is responsible for other large financial payments to be made to the production company for other video productions, which were written off as business expenses, despite having minimal commercial value and resulting in a substantial loss to the ESOP.

28.    More than $300,000 of Starkey funds were used to remodel and maintain Sawalich's personal residence, and the general contractor performing the work was told to indicate that the structure was owned by Starkey, rather than Sawalich, so that the expenses could improperly be written off by Starkey as a tax deduction.

29.    Expenses for use of a private aircraft were continuously charged to Starkey even though it was frequently used for activities having no relationship to the growth of the business or were for personal, non-business travel by Austin and Sawalich, which resulted in a depletion in the value of the company and the ESOP.

30.    Sawalich and his mother, Austin's wife, diverted substantial amounts of money, believed to be approximately $200,000 per month, to a business they owned in Illinois.  Ruzicka told Austin about the practice and Austin refused to do anything to stop the practice that Ruzicka believed was unlawful and injurious to the value of Starkey and the ESOP.

7

31.    Starkey set aside funds to use for sales promotions by providing rebates to customers who encourage and obtain orders for hearing aids, but funds that were not used and returned to the company were freely taken by Sawalich for his own personal use.

32.    Sawalich created a program to provide a free trip for sales staff and spouses without reporting the expenses as taxable income to the employees despite urging by accounting personnel that the value of the trips be treated as taxable income to the recipients.

33.    Austin has made various statements to Ruzicka and others that Ruzicka has found to be offensive, including but not limited to the following:

- Austin has stated that the company does not need to, and has discouraged the company from keeping good records, stating that "what got the Nazis in trouble was good record keeping," or words to that effect.

- He stated from time-to-time that his philosophy regarding contracts is that "everybody deserves a f(expletive)ing now and then."

- He stated that in business there should be two documents, one that we keep in the drawer and the other to show the tax man, or words to this effect.

- He also has stated that he does business in a way that "all of my expenses are tax deductible," or words to that effect, as well as stating that he would "never" pay any taxes on various transactions.

- He also has stated in discussing his style of negotiating business deals, that "everyone deserves a good f(expletive)ing now and then."

34.    Austin takes ear impressions and fits hearings aids, even though he is not licensed to do so by the State of Minnesota, which has led to a number of claims or expenses for damages to ears in excess of $4.5 million, including one claim by a well known actor for $3 million,

8

resulting from improper action by Austin, and Starkey is unable to obtain professional liability malpractice insurance for Austin.

35.  Austin also has spent substantial amounts of money to purchase items at various charitable events, which are supposed to be given to the Foundation, but actually are kept personally by Austin and Brandon Sawalich.

36.  Austin has created a program in which customers have been asked to commit to pay up to $200 for a hearing aid devoted to a so-called "Angel Fund," which was represented to be used for non-profit, charitable purposes by the Foundation when, in fact, the payments do not go to the Foundation.  As a result, Ruzicka suspects that customers may have been encouraged to deduct the "Angel Fund" payments from their taxes, even though they were not properly tax deductible.

37.  Following Hurricane Katrina in August of 2005, Austin announced that the company would donate $40 million in hearing aids in hurricane relief efforts, along with other contributions when, in fact, the financial support from Starkey was very minimal compared to the claimed $40 million.

38.  After being terminated, Ruzicka made demand for payment of wages earned and unpaid and owing to him in the approximate amount of $138,000, which Starkey declined to pay to him.

39.  On or about December 21, 2015, Defendants Brandon Sawalich and Austin, on behalf of Starkey, addressed numerous employees of the company at the company headquarters. Speaking on behalf of the company, Sawalich stated that Starkey is a "victim" of various improprieties or wrongdoing committed by Ruzicka involving criminal behavior by Ruzicka; that Ruzicka planned, plotted, or conspired with other Starkey personnel and employees to

engage in improper competitive activities after his employment ended with Starkey; breached his fiduciary duty to Starkey; and wrongfully inflated the company's budget to make Starkey appear to be performing below plan to advance his own post-employment competitive activities.

40.     Austin also told the Starkey employees that Ruzicka set artificially and improperly high revenue targets in the company's budget that it could not achieve in order to make Starkey appear to be performing poorly in order to advance Ruzicka's own post employment competitive activities.

### COUNT I:  WHISTLEBLOWER LAW

41.     Plaintiff realleges and incorporates the above allegations as though fully set forth and states and alleges as follows.

42.    Ruzicka, in good faith, reported many of the aforementioned improprieties, as set forth in Paragraphs 24 – 37, above, which constituted actual, suspected or planned violations of state or federal laws, regulations, or civil law, and/or situations in which the quality of health care services provided by Starkey violates a standard established by federal or state law or a professionally recognized national clinical or ethical standard and potentially placed the public at risk of harm.

43.     The aforesaid action by Ruzicka constituted protected activities under the Minnesota Whistleblower Act, Minn. Stat. § 181.932.

44.     Starkey terminated Ruzicka's employment in retaliation for the aforementioned activities or for his refusal to participate in actions that he regarded, in good faith, as unlawful.

45.     The aforesaid conduct by Starkey constitutes a violation of the Minnesota Whistleblower Act, Minn. Stat. § 181.931, *et seq.*

46.    As a result of the above, Ruzicka has suffered damages, including loss of income, in a reasonable amount in excess of $50,000.

47.    As a result of the above, Plaintiff is entitled to judgment against Defendant in a reasonable amount in excess of $50,000, together with his reasonable attorney's fees and costs incurred herein.

## COUNT II:  UNPAID WAGES

48.    Plaintiff realleges and incorporates the above allegations as though fully set forth and states and alleges as follows.

49.    Starkey has failed and refused to pay compensation and benefits owing to Plaintiff following his termination in the approximate amount of $138,000.

50.    Plaintiff has made demand for such payment.

51.    The aforesaid conduct by Defendant Starkey constitutes a violation of Minn. Stat. § 181.13, which requires prompt payment of wages to a terminated employee.

52.    As a result of the above, Plaintiff has suffered damages, including loss of wages in a reasonable amount in the approximate amount of $138,000.

53.    By reason of the foregoing, Plaintiff is entitled to judgment against Defendant Starkey in the approximate amount of $138,000, together with a wage penalty under Minn. Stat. § 181.17 and his reasonable attorney's fees and costs incurred herein.

## Count III:  DEFAMATION

54.    Plaintiff realleges and incorporates the above allegations as though fully set forth and states and alleges as follows.

11

55.     The communications made by Defendant Starkey that Ruzicka was the subject of an "ongoing investigation," as alleged in Paragraph 20, falsely implied that Ruzicka was engaged in criminal wrongdoing.

56.     The statements made by Defendants Brandon Sawalich and Austin, respectively, to Starkey employees on or about December 21, 2015, as alleged in Paragraph 39 and 40 above also constitute statements of criminal and civil wrongdoing by Ruzicka.

57.     The aforesaid statements constitute false statements of fact.

58.     The aforesaid statements harm the reputation of Plaintiff Ruzicka because they have caused his reputation to be lowered in the estimation of others.

59.     The aforesaid statements by Defendants Starkey, Sawalich and Austin constitute defamation *per se*.

60.     The aforesaid statements constitute defamation *per se* because they describe criminal behavior or immoral activity to Ruzicka or impugn him in his professional activities.

61.     As a result of the above, Plaintiff has suffered damages, including harm to his reputation, in a reasonable amount in excess of $50,000.

62.     As a result of the above, Plaintiff is entitled to judgment against Defendants Starkey, Sawalich, and Austin in a reasonable amount in excess of $50,000.

## COUNT IV:  ESOP VIOLATIONS

63.     Plaintiff realleges and incorporates the above allegations as though fully set forth and states and alleges as follows.

64.     Plaintiff Ruzicka is a participant in the ESOP, which is sponsored by Starkey.

65.     Defendant Austin is a trustee of the ESOP.

66.    The conduct described above, including the threat by Austin, as alleged in Paragraph 18, to cause the value of Starkey to be diminished in order to avoid having to pay Ruzicka constitutes a violation of Ruzicka's rights in the ESOP.

67.    The aforesaid conduct by Defendants Starkey and Austin constitute a violation of 29 U.S.C. §§ 1109 and 1132(a) (1) (B).

68.    As a result of the above, Plaintiff has suffered damages, or prospective damages, with respect to the value of his ESOP.

69.    The actions threatened and done by Defendants, which cause a decline of the value of Ruzicka's interest in the ESOP, is continuing in nature and is irreparable.

70.    Plaintiff is entitled to appropriate equitable relief, including a declaratory judgment and injunction, preventing Starkey and Austin and others acting in concert with them, from causing diminishment of the value of Ruzicka's interest in the ESOP, together with his attorney's fees and costs incurred herein.

**WHEREFORE**, Plaintiff Ruzicka requests the following relief against Defendants Starkey, Sawalich, and Austin as follows:

1.    Judgment against Defendant Starkey in a reasonable amount in excess of $50,000 for violation of the Minnesota Whistleblowers Law.

2.    Judgment against Defendant Starkey in the approximate amount of $138,000 for unpaid wages and benefits, and additional amounts for the statutory penalty, costs and attorneys fees.

3.    Judgment against Defendants, and each of them, in a reasonable amount in excess of $50,000 for defamation.

13

4.  Judgment against Defendants Starkey and Austin declaring that they may not take action, or act in concert with others, to cause the valuation of Starkey to decline in a way that diminishes Ruzicka's ESOP rights and enjoining and restraining them from doing so.

5.  Granting leave to Plaintiff to amend his Complaint to include a claim for punitive damages.

6.  Awarding to Plaintiff his pre-judgment and post-judgment interest.

7.  Awarding to Plaintiff his reasonable attorney's fees, costs and disbursements incurred herein.

8.  Such other and further relief as the Court deems just and equitable.

**A JURY TRIAL IS DEMANDED FOR ALL CLAIMS TRIABLE BY A JURY.**

HELLMUTH & JOHNSON, PLLC

Dated: January _12_, 2016          By: _____

Marshall H. Tanick (ID # 0108303)
8050 West 78th Street
Edina, Minnesota 55439
Telephone:    (952) 941-4005
Facsimile:    (952) 941-2337
**ATTORNEYS FOR PLAINTIFF
JEROME C. RUZICKA**

14

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.211, to the party against whom the allegations in this pleading are asserted.

Dated: January 12, 2016

Marshall H. Tanick (ID # 0108303)

15

# EXHIBIT 1

Exhibit 1

## EMPLOYMENT CONTRACT

Between:    Starkey Laboratories, Inc.
                6700 Washington Ave South
                Eden Prairie, Minnesota 55344 U.S.A.

hereafter known as Starkey

and:        Jerome C. Ruzicka

hereafter known as the President

Whereas Starkey Laboratories, Inc. (Starkey) wishes to employ Ruzicka and Ruzicka wishes employment by Starkey it is in Starkey's and Ruzicka's mutual desire to set forth all terms of Ruzicka's employment therefore the parties agree to the following:

### I.   Areas of Responsibility, Authorization

(1)    Starkey agrees to employ Ruzicka as the President of Starkey (the Company). He is obliged to manage the Company and its operations. He is directly responsible to the owner/CEO.

(2)    The President shall hold signature authority for the Company.

### II.   Duties and Responsibilities

(1)    The President shall execute his responsibilities with the diligence of a conscientious businessman and obey the obligations imposed upon him by the law, Articles of Association and Shareholders' Resolution or by other directives of the owner/CEO.

(2)    The President shall comply with the rights and duties of the employer in the context of the regulations with respect to Employment, Statutory, and Social Laws. He shall ensure that the accounting is and remains in conformity with the legal regulations. Further, he shall prepare an annual budget with detailed personnel, investment and financial plan for the oncoming fiscal year within a period set forth by Starkey.

(3)     Starkey is entitled to demand at any time, a report from certain or managing directors on the financial condition of the Company and to demand reports on specific business transactions.

(4)     The President shall place his entire working capacity, experience and knowledge at the disposal of the Company; he shall provide the necessary business overtime.

**III.**   **Beginning and Termination of the Contract**

(1)     The contract shall commence on **January 7, 2006** and shall not be terminated before January 6, , 2016 unless for an important reason as stated in III-(2).

(2)     Given an important reason, the employment contract may be terminated without prior notice with immediate effect. An important reason in particular is:

    (a)     the culpable infringement of a duty pursuant to section VI of this contract;

    (b)     violations or non-performance of Starkey's or its owner/CEO directives.

    (d)     other unforeseen events or occurrences.

(3)     Notice of termination must be given in writing. The Company may give notice through an organ which has been granted valid authorization. The President shall submit his notice of termination to the owner/CEO. The date of receipt of the termination notice is relevant in determining the period of notice.

**IV.**   **Compensation**

(1)     The base salary of the President shall total $600,000 (in words) six hundred thousand.

    The President's salary will be reviewed approximately every 18 months, and will be in line with industry norms with a minimum increase of 5% annually.

(2)     The Presidents yearly performance bonus will be determined at the discretion of Starkey, and will be based on market conditions, financial performance and general corporate goals. The company must be profitable for a bonus to be awarded. The President may be eligible for:

    (2.1)   $50,000 in bonus. This bonus will be awarded provided the company grows by >3% per year as identified in the companies financial statement

    (2.2)   $100,000 in bonus. This bonus will be awarded provided the company grows by >5% per year as identified in the companies financial statement.

2

(2.3)   $250,000 in bonus.  This bonus will be awared provided the company grows by >10% per year and obtains a 10% IBT.

(3)   Compensation for necessary business overtime is included in the aforesaid salary.

(4)   The President shall be reimbursed for expenses (travel and representation expenses, etc.) upon presentation of the receipt in accordance with the specific terms set out by the Company.  The receipts must be submitted within one quarter of the conclusion of the trip or function.

## VII.   Incapacitation and Death

(1)   In the event of sickness or other hindrance which is not the fault of the Managing Director, the salary shall continue to be paid for 90 days as of the end of the calendar month in which the hindrance begins.  If the Managing Director receives sick pay or similar compensation from third parties, the Company shall only pay the difference between the other compensation and the Managing Director's most recent salary during the 90 day period whether or not subsequent compensation payments are made shall be based on the judgment of the Company.

(2)   In the event of death of the Managing Director, his Beneficiary(s) shall receive his salary for 90 days as of the end of the month in which the death occurs.

## VIII.   Accident, Life Insurance

The Company shall bear the costs of insurance for the President against business related accidents in particular on trips, in the event of death, bodily harm and disability and other damages (doctor's fees, prescriptions and hospital costs, material damage, loss of salary, etc.).  The insurance claims shall accrue directly to the President or his heirs.  The principal of the insurance policy shall total at least the annual salary  in the case of the President's death.

## IX.   Loyalty Agreement

Ruzicka is entitled to a long-term services and loyalty bonus.  The Company will also provide him with a deferred compensation program that will guarantee him or his heirs to receive the accumulated gross pay received during the term of this contract as represented in his W-2 form.  Payment will be made in yearly increments using the following schedule.

| | |
|---|---|
| Payment 1 | January 7, 2016 |
| Payment 2 | January 7, 2017 |
| Payment 3 | January 7, 2018 |

3

| | |
|---|---|
| Payment 3 | January 7, 2018 |
| Payment 4 | January 7, 2019 |
| Payment 5 | January 7, 2020 |
| Payment 6 | January 7, 2021 |
| Payment 7 | January 7, 2022 |
| Payment 8 | January 7, 2023 |
| Payment 9 | January 7, 2024 |
| Payment 10 | January 7, 2025 |

## X.   Final Clause

(1) Should any provision or provisions of this contract be held invalid or illegal, such determination shall not affect the validity of the remaining provisions of the contract. If such occurs, the parties shall undertake to replace, amend or convert the invalid provision or provisions with a valid provision or provisions having, if possible, the same economic effect intended by the parties.

(2) Additional oral agreements were not concluded.

(3) Suspensions, amendments or supplements to this contract must be in writing.

IN WITNESS HISEOF:

dated _____ 1 / 7 /06 _____

For STARKEY
Starkey Laboratories Inc. as sole shareholder

William F. Austin
Owner/CEO

Jerome C. Ruzicka

dated _____ 1 / 7 /01 _____

4

# EXHIBIT 2

## AMENDMENT TO EMPLOYMENT AGREEMENT
### Jerome C. Ruzicka

This **AMENDMENT TO EMPLOYMENT AGREEMENT** ("**Amendment**") is entered into on **December 1, 2007** (the "**Effective Date**") by and between Starkey Laboratories, Inc., 6700 Washington Ave. S., Eden Prairie, MN 55344, its divisions, subsidiaries, affiliates, and related entities, and any successors, agents, assigns, and representatives ("**Starkey**"), William F. Austin, the owner and CEO of Starkey, and his heirs, beneficiaries, agents, assigns and representatives ("**Austin**") and Jerome C. Ruzicka, his heirs, beneficiaries, agents, assigns, and representatives ("**Ruzicka**"), collectively the "**Parties**" and individually as a "**Party**".

### RECITALS

1. Ruzicka and Starkey (as authorized by Austin) previously entered into an Employment Agreement ("**Agreement**") effective **January 7, 2006**, a copy of which is attached as Exhibit 1.

2. The Parties wish to amend the Agreement as set forth herein. All other terms of the Agreement shall remain the same and in full force and effect.

   **NOW, THEREFORE**, in consideration of the foregoing Recitals which are incorporated herein, the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

### AMENDMENT

1.   <u>Equity Value Bonus</u>

Starkey and Austin hereby promise to pay to Ruzicka, or in the event of his death, his estate or heirs, a bonus equal to (10%) of the of the *fair market value* ("**FMV**") of Starkey's stock ("**Bonus**"). Ruzicka's rights (or those of his estate or heirs) to this Bonus will vest on the earlier of the following triggering events: (a) death of Austin; (b) *disability* of Austin, which is defined as an illness or injury that prevents him from performing the essential functions of his duties and obligations to Starkey with or without reasonable accommodations; or, (c) a *change in control*, which is defined as the sale or disposition of all or substantially all of the assets of Starkey, or a merger or consolidation of Starkey with or into another company.

The FMV of the stock shall be based on Starkey's most current audited balance sheet. The Bonus shall be payable in a lump sum within 120 days of the triggering event, or as otherwise agreed by the Parties in writing.

2.   <u>Enforcement/Arbitration</u>

The Agreement and this Amendment shall be binding upon the heirs, executors, administrators, successors and assigns of the Parties. The Parties hereby covenant and agree that they, their

heirs, executors, administrators, successors and assigns will take all action and execute any and all instruments, releases, assignments, and consents which may reasonably be required of them in order to carry out the provisions of the Agreement and the Amendment. Neither the Parties, nor their representatives, heirs, executors, administrators, successors and assigns, shall commence a civil action based upon the Agreement or this Amendment. The Parties agree that any dispute regarding the Agreement or this Amendment shall be solely submitted to binding mediation or arbitration with AAA, or such other organization as the Parties shall agree upon.

**IN WITNESS WHEREOF,** the Parties hereto have executed this Agreement as of the date referenced above.

**STARKEY LABORATORIES, INC.**
6600 Washington Avenue South
Eden Prairie, MN 55344

BY: William F. Austin, individually as a Party and as owner and CEO of Starkey

BY: Jerome C. Ruzicka